UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

BRIAN HENDERSON,

    Plaintiff,

v.                                       Case No. 04-CV-3037

TREY H. JOHNSON, BARB
WINGERTER, BILLY PICKERING,
BRETT A. KLINDWORTH, FEDERICO
FERNANDEZ, MARK A. PIERSON,
SHERRY HILE, ROGER E. WALKER,
W. WEATHERFORD, and WILBUR
GENE PURSELL,

    Defendants.

**Order**

    The remaining claims in this case are the defendants' alleged retaliation against the plaintiff for his May 15, 2003, grievance, and his punishment for that grievance in violation of his First Amendment rights. (d/e 7, 3/31/04 Order). The remaining defendants include all of the above save defendants Walker and Hile, who were dismissed on merit review. *Id.*

    Before the court is the defendants' motion for summary judgment (52), which is denied for the reasons below.[1]

Summary Judgment Standard

    A party moving for summary judgment must show, from the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . ." that there is no genuine issue of material fact and that the "moving party is entitled to judgment as a matter of law. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);Fed. R. Civ. P.56(c). This burden can be satisfied by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If such a showing is made, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Outlaw*, 259 F.3d at 837. A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992).

Undisputed Facts

    1. During his incarceration at Pinckneyville Correctional Center ("Pinckneyville"), the plaintiff was an inmate worker assigned to the warehouse.

    2. The plaintiff's supervisor while he was assigned to the warehouse was Defendant Trey Johnson. Defendant Johnson still works as a warehouse supervisor at Pinckneyville.

---

[1] Defendants Pursell and Weatherford have not joined in the motion.

3. Defendant Johnson terminated the plaintiff from his inmate job on or around May 15, 2003. The parties dispute the reason for the termination. Defendant Johnson avers the termination was "solely due to [the plaintiff's] work performance." (Johnson Aff. ¶ 2, d/e 53, Ex. A). The plaintiff asserts he was fired because he "refused to engage in homosexual jokes with Supervisor Johnson." (Plaintiff's Dep. p.8, attached to d/e 53).[2]

4. The plaintiff filed a grievance regarding his termination on May 15, 2003.

5. In his May 15th grievance, Plaintiff claimed he was terminated because he refused to engage in "homosexual joking" between Defendant Johnson and other inmates. (Much of this grievance is illegible, so the court cannot set forth its contents verbatim). The plaintiff alleges in his Complaint that Defendant Johnson fired him because he "refused to participate in homosexual and sexual joking, often engaged in by defendant Johnson with other prisoners assigned to the institutional warehouse." (Amended Complaint, d/e 18, ¶ 26). The plaintiff also asserts that he was also terminated because he verbally complained to other staff about Defendant Johnson's "verbal sexual abuse," that Defendant Johnson repeatedly joked with "a homosexual overtone" and harassed him and other inmates. (Henderson Aff. ¶¶ 1, 5). The grievance is largely illegible, so the court infers in the plaintiff's favor that the grievance complained of all these alleged actions.

6. Plaintiff's grievance was submitted to his counselor, Defendant Barb Wingerter.

7. As part of the review process regarding the plaintiff's grievance, Defendant Wingerter read the grievance verbatim to Defendant Johnson.

8. Defendant Johnson denied acting inappropriately toward the plaintiff or other inmates, and denied engaging in any "homosexual joking" with the plaintiff or any other inmate workers. Defendant Wingerter noted this in her response to the plaintiff's grievance, essentially finding no factual support for the plaintiff's allegations (d/e 55, Ex. D). The grievance officer (not a defendant) subsequently denied the grievance for insufficient evidence.

9. On May 16, 2003, Defendant Johnson wrote a disciplinary report against the plaintiff, charging the plaintiff with intimidation and threats, shortly after learning of the grievance:

> On the above date and time this . . .supervisor was questioned about a grievance written against this employee by inmate Henderson K55746. During this question counselor Wingerter informed this employee that inmate Henderson K55746 had made lewd[3], inappropriate and false statements of sexual and homosexual conduct by this employee. These false statements are considered serious and intimidating toward this employee's career."

(d/e 55, Ex. E). Defendant Johnson avers that the plaintiff's allegations are completely false and that he has never engaged in any inappropriate conduct at work. (Johnson Aff. ¶ 4, d/e 53, Ex. A.).

10. The disciplinary report written by Defendant Johnson was written solely because of the contents of the grievance the plaintiff had written.

11. Based on the seriousness of these charges, Defendant Pickering approved the plaintiff's placement in temporary segregation, pending disposition of the charges.

---

[2]The plaintiff testified in his deposition that he could not recall exactly what Defendant Henderson said, but that Henderson "basically tried to engage me in homosexual related jokes. I brushed him off and kept on walking, and he approached me and just told me basically I was fired, I didn't have to worry about coming back to work." (Plaintiff's Dep. p. 8).

[3]This word is largely illegible, but appears to be "lewd."

2

12. The plaintiff disputes that temporary segregation pending the disposition of the charges was warranted because it was clear he had made no threatening or intimidating statements.

13. The Plaintiff remained in temporary segregation for approximately seven days, until his disciplinary report was heard before the adjustment committee at Pinckneyville.

14. At the adjustment committee hearing on May 21, 2003, Defendants Klindworth and Fernandez reduced the charges against the plaintiff from "intimidation/threats" to "insolence." The record of proceedings from the Final Summary Report reads in part:

> Inmate plead not guilty stating "I gave counselor Wingerter a grievance which stated that he (Johnson) fired me for nothing. He was always trying to engage me in homosexual jokes and I'm not into that."

The Basis for Decision states:

> Inmate's own partial admission of guilt by stating that he did write a grievance and gave it to counselor Wingerter. Reporting staff's report stating that inmate wrote a grievance which contained false statements of sexual and homosexual conduct by reporting staff."

(d/e 55, Ex. F). Defendants Klindworth and Fernandez found the plaintiff guilty and recommended a demotion in disciplinary grade C for one month and seven days in segregated confinement. Defendant Pierson (the Warden) approved the recommendation.

15. On June 3, 2003, the plaintiff filed a grievance challenging the discipline (d/e 55, Ex. G). Defendant Pursell, the grievance officer, denied the grievance; Defendant Pierson concurred.

Analysis

*First Amendment*

The defendants argue that the plaintiff's grievance is not protected by the First Amendment because it "contained improper language in the form of false allegations of serious sexual misconduct on the part of Defendant Johnson." (d/e 53, p. 10).

Yet whether the plaintiff's allegations in the grievance are true is a disputed question of fact on the present record. On summary judgment, the court is required to credit the plaintiff's version, which is based on his own personal knowledge. The plaintiff avers that Defendant Johnson fired him because he refused to play along with Defendant Johnson's "sexual and homosexual joking," and because the plaintiff complained to other supervisors about what he perceived to be Johnson's harassing conduct. The court acknowledges that prison officials found the charges unsubstantiated, but that finding required them to make a credibility determination between Defendant Johnson and the plaintiff. The court cannot make credibility determinations on summary judgment. The court respects that prisons have a legitimate interest in protecting their employees from knowingly false and malicious charges by inmates. But again, in this case such a finding would require the court to credit Defendant Johnson's testimony over the plaintiff's. This is not a case where the plaintiff's allegations against Defendant Johnson clearly have no factual support or were obvious extraneous insults unrelated to the subject of his grievance. *Cf. Hale v. Scott*, 371 F.3d 917, 918-919 (7th Cir. 2004)(inmate's punishment for repeating baseless rumor about sexual misconduct upheld where inmate had no basis for believing rumor to be true, and rumor was unrelated to subject of grievance.).

Defendants also argue that the plaintiff's grievance does not deserve First Amendment protection because it relates to a personal concern, rather than an issue of public importance, citing *Brookins v. Kolb*, 990 F.2d 308, 313 (7th Cir. 1992). *Brookins* rested primarily on the inmate's rights in his position as a co-chairman, making it more

analogous to First Amendment cases involving retaliation against public employees for speaking out, not to an inmate's right to file grievances. *See McElroy v. Lopac*, 403 F.3d 855, 858 (7th Cir. 2005)(no retaliation claim where inmate fired from prison job for oral inquires about lay-in pay because those inquiries were not protected speech). Here, the plaintiff does not press a free speech claim that he was wrongfully terminated for speaking out against Johnson. His claim is that he was punished for filing a grievance. The public employee analysis is therefore inapposite.

The defendants do not address the plaintiff's rights to petition for redress and right to access the court, which are grounded in the First Amendment along with his right to free speech. "Prisoners are entitled to utilize available grievance procedures without threat of recrimination . . ." *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005). "Prisoners have a constitutional right of access to the courts that, by necessity, includes the right to pursue the administrative remedies that must be exhausted before a prisoner can seek relief in court. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 1999). These First Amendment rights are subject to legitimate penological interests (as is the right to free speech), but whether legitimate penological interests exist here is a disputed question of fact. *See Shaw v. Murphy*, 532 U.S. 223, 229 n.2 (2001)(affirming that *Turner v. Safley* is the test for First Amendment claims).

*Retaliation*

The defendants also argue that no reasonable inference arises that things would have turned out differently, absent any retaliatory motive.

To succeed on a retaliation claim, the plaintiff must "establish that his protected conduct was a motivating factor behind [the defendants' actions], but that should not end the inquiry. Because the ultimate question is whether events would have transpired differently absent the retaliatory motive . . ." *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). If the same action would have occurred regardless of the retaliatory motive, the claim fails. *See Spiegla v. Hull*, 371 F.3d 928, 942 (7th Cir. 2004).

If the defendants' actions were supported by legitimate penological purposes, then the plaintiff's retaliation claim fails, because those actions would have occurred anyway. Here, though, whether the defendants' actions were supported by legitimate penological concerns is a question of fact that turns on the credibility of the parties. Summary judgment is accordingly precluded.

*Qualified Immunity*

Crediting the plaintiff's version, a reasonable inference arises that the defendants retaliated against him for filing a legitimate grievance, and violated his First Amendment rights by punishing him for the content of that grievance. Thus, qualified immunity is not appropriate on the present record, as the plaintiff's constitutional right to file a grievance without recrimination was well established at the time of the alleged violations. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 1999).

*Compensatory Damages*

The defendants argue that the plaintiff cannot recover compensatory damages under the Prisoner Litigation Reform Act. 42 U.S.C. § 1997e(e) bars actions by inmates "for mental or emotional injury suffered while in custody without a prior showing of physical injury." Compensatory damages for *mental or emotional* injury are barred, but not other compensatory damages (such as lost wages). Nominal and punitive damages are also not barred under 42 U.S.C. § 1997e(3). *Cassidy v. Indiana Dep't of Corrections*, 199 F.3d 374, 377 (7th Cir. 2000); *Robinson v. Page*, 170 F.3d 747, 749 (7th Cir. 1999); *Rowe v. Shake*, 196 F.3d 778, 781 (7th Cir. 1999). The defendants' request to bar all compensatory damages is therefore denied.

IT IS THEREFORE ORDERED:

1) The defendants' motion for summary judgment is denied (d/e 52).

2)  A final pretrial conference is scheduled for March 14, 2006, at 1:30 p.m. by video conference.  The parties are further directed to submit the proposed final pretrial order by March 7, 2006.  The defendants are reminded that they bear the responsibility for preparing the final pretrial order.

3)  The proposed final pretrial order must include (1) the name, prison number, and place of incarceration for each inmate to be called as a witness; 2) the name and place of employment for each Illinois Department of Corrections employee to be called as a witness; and 3) the names and addresses of any witnesses who are not inmates or IDOC employees for whom the plaintiff seeks a trial subpoena. The plaintiff is responsible for timely requesting the subpoenas–i.e., with sufficient time for him to serve them before trial.  The plaintiff  must provide the witness fee and mileage fee to such witnesses and is responsible for service of those subpoenas under Fed. R. Civ. P. 45;

4)  A jury trial is scheduled for March 27, 2006, at 9:00 a.m. at the U.S. Courthouse, 201 S. Vine St., Urbana, IL.  The plaintiff and the defendants shall appear in person before the court sitting in Urbana.  Inmates of the Illinois Department of Corrections who are not parties to this case shall appear by video conference and IDOC employees who are not parties may appear by video conference.

5)  The Clerk is directed to issue appropriate process to secure the parties' video appearance at the final pretrial; the plaintiff's personal appearance at the trial; and, the video appearance of inmate and IDOC employee witnesses listed in the final pretrial order.

Entered this 1st day of September, 2005.

s\\**Harold A. Baker**

HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE