UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

BRIAN HENDERSON,

    Plaintiff,

v.                                       Case No.  04-CV-3037

TREY H. JOHNSON, BARB
WINGERTER, BILLY PICKERING,
BRETT A. KLINDWORTH, FEDERICO
FERNANDEZ, MARK A. PIERSON,
SHERRY HILE, ROGER E. WALKER,
W. WEATHERFORD, and WILBUR
GENE PURSELL,

    Defendants.

**Order**

    The jury in this case returned a verdict on the plaintiff's claim of retaliation for the exercise of his First Amendment rights against all the defendants, awarding compensatory damages of $300.00, and punitive damages of $18,500.00.  Before the Court is the defendants' renewed motion for judgment as a matter of law or in the alternative for a new trial (d/e 76) and the plaintiff's objections.

    The court concludes that the evidence supports the verdict only against defendant Johnson.  There was no evidence presented at trial that the other defendants were personally responsible for Johnson's retaliatory actions.  Judgment as a matter of law must therefore be entered in favor of each of the defendants other than Johnson.

    As to Johnson, the court concludes that the plaintiff failed to prove any compensatory damages and that the punitive damages ($5000) awarded were excessive.  In the court's view, the evidence presented at trial supports a nominal compensatory damage award of $1.00, and, at most, punitive damages of $500.00 against Johnson.  A new trial on damages against defendant Johnson will be held if the plaintiff does not accept the court's remittitur of damages.

*The Law*

    Federal Rule of Civil Procedure 50(a)(1) permits judgment as a matter of law if  "there is no legally sufficient evidentiary basis for a reasonable jury to find for" the non-moving party.  The inquiry is "'whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed." *Susan Wakeen Doll Co., Inc., v.*

*Ashton-Drake Galleries*, 272 F.3d 441, 449 (7th Cir. 2001)(quoting Goodwin v. MTD Prods., Inc., 232 F.3d 600, 606 (7th Cir. 2000)(additional citations omitted)). In reviewing the evidence, courts are not permitted to make credibility determinations, "and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The test for determining whether to grant a new trial is whether "'the verdict is against the weight of the evidence, the damages are excessive [or insufficient], or if for other reasons the trial was not fair to the moving party." *Shick v. Illinois Dep't of Human Serv.*, 307 F.3d 605, 610 (7th Cir. 2002)(brackets in original)(other citations omitted). "Only when a verdict is contrary to the manifest weight of the evidence should a motion for a new trial challenging the jury's assessment of the facts carry the day." *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 424 (7th Cir. 2000). A jury verdict cannot be set aside if "a reasonable basis exists in the record to support the verdict, viewing the evidence in the light most favorable to the prevailing party, and leaving issues of credibility and weight of evidence to the jury." *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004).

"The federal courts have long recognized a prisoner's right to seek administrative or judicial remedy of conditions of confinement, . . . as well as the right to be free from retaliation for exercising this right." *Babcock v. White*, 102 F.3d 267, 276 (7th Cir. 1996)(citations omitted)(denying qualified immunity for retaliation claim). "Prisoners are entitled to utilize available grievance procedures without threat of recrimination . . ." *Hoskins v. Lear*, 395 F.3d 372, 375 (7th Cir. 2005). " "To succeed on a retaliation claim, the plaintiff must "establish that his protected conduct was a motivating factor behind [the defendants' actions], but that should not end the inquiry. Because the ultimate question is whether events would have transpired differently absent the retaliatory motive . . ." *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996).

However, while an inmate may not be retaliated against for filing a grievance, he may be disciplined for the language he uses in the grievance. For example, an inmate may be punished for making false, libelous, threatening, or insolent statements in a grievance. *See, e.g., Hale v. Scott*, 371 F.3d 917 (7th Cir. 2004). However, unless Defendants have uncontradicted evidence that the inmate lied, whether Defendants *believed* he lied in his grievance is a question for the jury. *See Hasan v. U.S. Dept. Of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2005); *Greeno v. Daly*, 414 F.3d 645, 655 (7th Cir. 2005)(whether medical professionals believed inmate was malingering and did not really have a serious medical need is jury question).

*The Evidence*

In May, 2003, the plaintiff was an inmate assigned to work in the warehouse at Pinckneyville Correctional Center. Defendant Johnson was his supervisor. Plaintiff was terminated from his job. The plaintiff filed a grievance against Johnson, complaining that Johnson had terminated the plaintiff because the plaintiff had refused to engage in "homosexual joking."

Defendant Wingerter, the plaintiff's counselor, reviewed the grievance and read it to

Johnson. Johnson denied the accusations. Johnson then filed a disciplinary report charging the plaintiff with "intimidation or threats," based on the contents of the plaintiff's grievance. Defendant Pickering approved the plaintiff's placement in temporary segregation until the disciplinary hearing. At the hearing, the adjustment committee reduced the charge to insolence and found the plaintiff guilty, sentencing him with one month grade demotion and seven days of segregated confinement. The Administrative Review Board reversed the findings and expunged the ticket. Sherry Benton, one of the ARB members, testified that the ticket was expunged because the Illinois Administrative Code prohibits punishment for language in grievances. This is not entirely accurate. An inmate can not be punished for using the grievance procedure, but the Code does allow punishment for making knowingly false accusations in a grievance. 20 Ill. Admin. Code 504.810.

The plaintiff testified that on May 15th or 16th, 2003, he was:

> moving throughout the warehouse doing what was asked of me concerning my assignment and alone; and during that time, the defendant, Trey Johnson, who constantly throughout the time in which I worked there engaged other inmates in homosexual jokes in which I tried my best to avoid by constantly staying busy and staying out of the presence of the defendant, Trey Johnson. On this particular date, the Defendant Johnson had – while I was in the aisles stacking boxes on the shelf, had whistled at me and blew kisses at me, and while I was bending down stacking the boxes on the shelf, if I am not mistaken, he had also tried to joke with me as well, and I turned around and confronted him in a respectful manner and told him I just don't interact and I do not play like that. Upon me saying that, he told me that I had no longer had to worry about working here no more to get my things and go back to the housing unit, in which I obeyed on his direct order. . .

(Tr. pp. 11-12).

Plaintiff called Rodney Grace as a witness, an IDOC inmate who worked at the warehouse at the time in question. Grace testified that he had worked in the warehouse for three or four years, and that Defendant Johnson regularly engaged in homosexual joking with inmates, though Grace had never complained to anyone about it. (Tr. pp. 31-32). Grace testified he was able to overlook the comments and continue about his day. (Tr. p. 34).

The plaintiff also called Sherry Benton, an ARB member, who testified that 20 Ill. Admin. Code 504.810 prohibits punishment "for words that you used against staff or your feelings or thoughts about them unless you were just directly outright threatening to take someone's life, to kill them, blow up buildings, that sort of major, because of that rule, I expunged your ticket . . .(Tr. p. 39). Benton also testified that she had not believed the plaintiff's accusations, but had expunged the ticket because of her understanding of Section 504.810.

Defendant Johnson testified that he had worked for the IDOC for 17 years, and in the

Pinckneyville warehouse since 1998. He testified that on May 16th, Defendant Wingerter read the plaintiff's grievance to him verbatim. Johnson testified that the grievance was patently false and that he had never engaged in homosexual joking with any inmates under his charge. (Tr. p. 53). He testified that he filed a disciplinary report against the plaintiff for writing the grievance because he felt the grievance was "intimidating toward my career" and could jeopardize his chances for promotion if left unanswered. (Tr. p. 50, 52-53). He also testified that the plaintiff was only there for about one and a half months: "You have to learn how to run palett jacks. And Mr. Henderson wasn't catching on. He was only there a month and a half. I told him you are done. I was going to have him reassigned. I didn't even write a ticket on the firing. He was going to be reassigned. . . ." (Tr. p. 54).

Wendell Weatherford, an IDOC employee for 13 years and a supply supervisor who worked with Johnson, testified that he had never observed Johnson engaging in homosexual jokes with inmates and echoed Johnson's assessment that the plaintiff's job performance had been unsatisfactory. (Tr. p. 57-58).

Defendant Wingerter, the plaintiff's counselor, testified that she read the plaintiff's grievance verbatim to Johnson. Wingerter testified that Johnson denied the charges and she believed him, without referring the matter to internal affairs or questioning the other inmates in the warehouse. (Tr. p. 62-63, 67-68). Wingerter also answered "no" to the question whether she had received any other inmate complaints about Johnson "regarding homosexual activity, groping or anything such as that[.]" (Tr. p. 68).

Defendant Pursell, the grievance officer, testified that he concurred with the Adjustment Committee's findings. He said, "I interviewed Johnson and asked him personally if he had made any comment of homosexual innuendos towards the defendant. . . . he said absolutely not and I took his word for that. That he said no absolutely not and so that was my position from there." (Tr. p. 91).

Defendant Pickering testified that he reviewed Johnson's disciplinary ticket and determined, based on safety concerns for Johnson, that the plaintiff should be placed in temporary confinement until the Adjustment Committee heard the ticket. (Tr. pp. 73-74).

Defendant Klindworth, ARB member, testified that he reduced the charges of intimidation to insolence because, "[a]fter reviewing the grievance and the false statements in it, in my opinion I didn't feel that they were life threatening toward Mr. Johnson. However, I thought it attacked his integrity. It could have given him some hardship as far as what people thought even though they were false." (Tr. p. 31). Klindworth further testified that he asked Johnson and Johnson told him there was no homosexual joking going on. Based on Johnson's denial, Klindworth found the statements in the plaintiff's grievance were false. (Tr. p. 81). Defendant Fernandez' testimony was the same (he was the other ARB member).

Defendant Pierson (the warden) testified that his designee, Assistant Warden Flagg, concurred with the findings of the ARB. (Tr. p. 88).

*Application of the Law to the Evidence*

*I. Defendant Johnson*

The plaintiff's testimony, if believed, allows a reasonable inference that Johnson fired him because the plaintiff told Johnson he did not want to participate in Johnson's homosexual joking. Johnson said the accusations were patently false, but the court cannot disturb credibility determinations of the jury. If the jury believed the plaintiff, as they apparently did, they could have concluded that Johnson deliberately filed a false disciplinary report against the plaintiff, out of retaliation for the plaintiff's grievance about his job loss and to cover-up his homosexual joking with the inmates. That necessarily allows an inference that Johnson would not have filed the false report absent the plaintiff's grievance. Again, the defendants' evidence allowed opposite inferences, but the court is not allowed to make credibility determinations.

Qualified immunity is not available either. Accepting the jury's credibility determinations, Johnson filed a false disciplinary report against the plaintiff in retaliation for the plaintiff's true grievance against Johnson. A long line of controlling precedent establishes that retaliation for filing a prison grievance states a constitutional claim, even if the retaliatory act would not otherwise violate the constitution. *Pearson v. Welborn*, 471 F.3d 732 (7th Cir. 2006)(Defendants acknowledging that "a prison grievance is protected as 'speech that is necessary to inform prison officials of prisoner needs and to protect a prisoner's right to later petition to courts'"); *Johnson v. Stovall*, 233 F.3d 486, 489 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996)("The federal courts have long recognized a prisoner's right to seek administrative or judicial remedy of conditions of confinement, . . ., as well as the right to be free from retaliation for exercising this right.")(citation omitted); *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 1999)("Prisoners have a constitutional right of access to the courts that, by necessity, includes the right to pursue the administrative remedies that must be exhausted before a prisoner can seek relief in court. . . . Thus, a prison official may not retaliate against a prisoner because that prisoner filed a grievance)(retaliation for grievance about losing prison job stated constitutional claim). Johnson's qualified immunity argument relies on the truth of his testimony, a determination that belonged to the jury.

*II. Other Defendants*

There was no evidence to support a finding of personal responsibility against any of the defendants except Johnson. The other defendants, except for Weatherford, held various roles in handling the plaintiff's grievance and Johnson's disciplinary reports. Yet the most they are guilty of is believing Johnson over the plaintiff without interviewing other inmates who worked at the warehouse. The plaintiff presented no evidence that these defendants should have had reason to suspect Johnson was lying, particularly in light of Johnson's long employment record and the plaintiff's short one. They acted within their discretion to believe Johnson without further investigation, at least on the evidence presented at the trial. As for Weatherford, he witnessed the disciplinary report, but he did not write it, did not testify at the hearing, nor was he interviewed. He took Johnson's side, but that is not sufficient to infer personal responsibility against him. That the Administrative Review Board overturned the discipline does not allow an inference that these defendants retaliated against the plaintiff.

*III. Compensatory Damages*

Defendants assert that Plaintiff suffered no compensatory damages. The jury awarded $300 in compensatory damages.

Relevant considerations in reviewing compensatory damages are "whether the award is monstrously excessive, whether there is no rational connection between the award and the evidence, and whether the award is roughly comparable to awards made in similar cases." *Kapelinski*, 390 F.3d at 532. The "plaintiff has the burden of proving damages to a reasonable degree of certainty." *Haslund v. Simon Prop. Goup, Inc.*, 378 F.3d 653, 658 (7th Cir. 2004).

The plaintiff cannot recover compensation for his mental and emotional suffering because he sustained no physical injury. 42 U.S.C. § 1997e(e). The failure to reinstate the plaintiff to his job might support compensatory damages, but there was no testimony on how much money he had been making or would have made had he been reassigned.

The plaintiff did spend seven days in segregation (the ticket was ultimately expunged, but the plaintiff had already served his time in segregation). The compensatory award of $300 comes out to just under $43 a day. *See Saxner v. Benson*, 727 F.2d 669 (7th Cir. 1984)($4,500 of compensable damage for 35 days in segregation); *Smith v. Rowe*, 761 F.2d 360, 368 (7thCir. 1985)(declining to disturb jury verdict of about $119 compensatory damages a day for segregation)(both pre-PLRA cases).

Three hundred dollars is not "monstruously excessive," but *Smith* and *Saxner* predate the Prison Litigation Reform Act (PLRA). Under 42 U.S.C. § 1997e(d), damages for mental or emotional injury are not recoverable, absent physical injury: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Compensatory damages for segregation would be barred under 42 U.S.C. § 1997e(e), if the damage suffered by segregation is solely mental or emotional. *See Pearson v. Welborn*, 471 F.3d 732, 744-45 (7th Cir. 2006)(plaintiff failed to show how more onerous conditions at maximum security prison "would be anything but recovery for 'mental or emotional' injury now barred by the PLRA"); *Royal v. Kautzky*, 375 F.3d 720 (8th Cir. 2004)(discussing §1997e(e) and upholding nominal damages award for being placed in segregation for sixty days in retaliation for filing grievances). Plaintiff argues that he was "exposed to a number of physical aches, pains, and discomforts" in segregation, but that does not rise to a "physical injury" under § 1997e(e). *Pearson*, 471 F.3d at 744 (plaintiff's unelaborated testimony of mental and physical depression, plus 50 pound weight loss did not establish physical injury).

In any event, even if compensatory damages for segregation might be recoverable on a retaliation claim in the right case, this is not the right case. There was no testimony or other evidence about the deprivations Plaintiff suffered during his seven-day segregation, nor any attempt to put a dollar value on those deprivations. *See Ustrak v. Fairman*, 781 F.2d 573 (7th Cir. 1986)(recognizing that loss of amenities might be recoverable damages, but concluding that plaintiff had failed to adduce evidence of that loss)(Pre-PLRA). There was some testimony in

this case about being subject to strip search before placement in segregation, but that alone would not warrant compensatory damages. With no evidence of actual injury, compensatory damages are limited to $1.00. *See Ustrak*, 781 F.2d at 578-79 (proof of retaliation without proof of extent of injury requires award of nominal damages), *citing Carey v. Piphus*, 435 U.S. 247, 264-67 (1978).

*IV. Punitive Damages*

As to punitive damages, there is a reasonable basis in the record for *some* punitive damages against Johnson. The jury could have reasonably believed Johnson deliberately contrived a false disciplinary report against the plaintiff in retaliation for the plaintiff's grievance and to cover-up his "homosexual joking."

However, the amount of punitive damages ($5,000) is far in excess of what the evidence at trial supported. The test is: (1) the degree of reprehensibility of defendant's conduct; (2) the disparity between the harm or potential harm suffered by the plaintiff and his punitive damages award; and (3) the difference between this remedy and the civil penalties authorized or imposed in comparable cases." *Kapelanski v. Johnson*, 390 F.3d 525, 534 (7th Cir. 2004)(other cites omitted). The purpose of punitives is to punish the wrongdoer and deter similar future conduct. *See AIC Sec. Investigations, Ltd.*, 55 F.3d 1285 (7th Cir. 1995).

The evidence did not support a finding that Johnson's conduct was so reprehensible as to justify $5,000 in punitives. The evidence was not strong in the plaintiff's favor, though it did meet the "preponderance" standard. The plaintiff had no corroborating evidence that he had been performing his job adequately, nor did he have any evidence that Johnson's behavior bothered any other inmates. There was no evidence that any other inmate had filed a similar grievance against Johnson or had ever complained about Johnson's "homosexual joking," even though Johnson had been with the IDOC 17 years, working in the warehouse for six of them (compared to the plaintiff's only one and ½ months at the warehouse). Even the plaintiff's witness Rodney Grace, who had worked in the warehouse for years with Johnson, testified that Johnson's joking had not bothered him enough to do anything about it. Reasonable inferences in Johnson's favor supported his claim that he did not engage in "homosexual joking," or at least that the joking was overblown by the plaintiff. And, the court does not believe it was made clear at the trial that Johnson was entitled to defend his reputation and career against what he believed, in good faith, were false and damaging accusations. The jury may have been confused by the plaintiff's statements that Illinois law prohibits a prison official from disciplining an inmate for a grievance, particularly in light of Benton's testimony to the same. (Tr. pp. 50-51). The jury may have incorrectly inferred that Johnson was not allowed to file a disciplinary report against the plaintiff for making false accusations of misconduct.

In the court's view, allowing the $5,000 in punitives to stand would be a unwarranted windfall to the plaintiff and is not necessary to achieve the goals of punishing Johnson and deterring similar conduct in the future. The modest harm suffered by the plaintiff does not support an award of $5,000 in punitive damages. *See, e.g., Smith v. Davis*, 02-CV-233 (N.D. Ind.)(jury returned guilty verdict on claim that inmate was placed in administrative segregation

7

for over *three years* in retaliation for grievance; $1 of compensatory damages, $1,000 in punitive damages from each defendant who was primarily responsible).  Additionally, allowing the award to stand might also discourage the ARB and committee members from taking corrective action in future cases.

The Court believes that the award of punitive damages should be reduced to $500.00.  The court believes this amount is substantial enough to recognize the importance of the plaintiff's constitutional right to petition for redress without retaliation, to punish Johnson, and to deter others from similar retaliation in the future.

IT IS THEREFORE ORDERED:

1)  The defendants' motion for judgment as a matter of law or for a new trial is granted in part and denied in part as set forth below (d/e 76).

2)  The defendants motion for judgment as a matter of law is granted as to defendants Wingerter, Pickering, Klindworth, Fernandez, Pierson, Weatherford, and Pursell.  The clerk is directed to enter an amended judgment in favor of defendants Wingerter, Pickering, Klindworth, Fernandez, Pierson, Weatherford, and Pursell and against the plaintiff.

3)  The defendants' motion for judgment as a matter of law is denied as to defendant Johnson.

4) The defendants' motion for a new trial as to the liability of defendant Johnson is denied.

5) The defendants' motion for a new trial as to damages against defendant Johnson is granted, *unless* the plaintiff accepts the court's reduction ("remittitur") of damages.

6) By April 2, 2007, the plaintiff shall inform the court in writing if he accepts the court's reduction (remittitur) in compensatory damages to $1.00 and punitive damages to $500.00, or, if he instead wishes to proceed to a new trial on damages against defendant Johnson.  The plaintiff is advised that, if he accepts the remittitur, he will be barred from raising the issue on appeal. *Europlast Ltd.*, 10 F.3d 1266, n. 6 (7th Cir. 1993).

Entered this 12th Day of March, 2007.

s\Harold A. Baker

HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE